UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES H. DIXON, III,

        Plaintiff,

v.                                    Case No. 3:05-cv-1153-J-33HTS

DONALD C. WINTER, SECRETARY
OF THE NAVY,

        Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant Donald C. Winter's Motion for Summary Judgment (Doc. #19), filed on July 6, 2007. Plaintiff filed his Response (Doc. #21) on July 17, 2007. For the reasons below, the motion is granted.

**I.    STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The

moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324). If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples *ex rel.* Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

## II.     BACKGROUND

Dixon is employed as a materials engineer by the Fleet Readiness Center Southeast, formerly known as the Naval Air Depot, Jacksonville (NADEP). (Doc. #19 at 2.) Dixon was born in 1952, and he has an undergraduate degree in chemistry, a master's degree in materials engineering, and a law degree. (Id.) In February 2005, the Human Resources Center Southeast posted an announcement for an open position for Supervisory Aerospace Engineer. (Id. at 3.) The HRC, a distinct U.S. Navy command from NADEP, determined which applicants were eligible for the

position, and then issued a certificate to eligible applicants allowing them to compete for the position. (Id. at 2.) Dixon was among the eligible candidates on the list for consideration for the Supervisory Aerospace Engineer opening. (Id. at 3.) After the applicants were narrowed to eligible candidates, a Selection Advisory Board was convened for the vacancy. (Id. at 2.) The SAB rates the applicants based on their resumes, using several factors, and then the SAB collectively selects a candidate to recommend to the official who will make the final decision on who will fill the position. (Id. at 3.)

At the conclusion of the resume review, the SAB identified six candidates to be personally interviewed: Dixon (born 1952), Ron Francis (born 1961), Liz Nealin (born 1957), Lane Watkins (born 1948), Jerry Deans (born 1955), and David Strickland (born 1961). (Id. at 5.) At this stage, Dixon received a total score of 100 points, and Ron Francis received a total score of 107 points. (Id.) At the next stage, the eligible candidates were interviewed on February 24, 2005, for approximately twenty minutes, and each candidate was asked the same five questions. (Id.) After the interviews, the SAB recommended Ron Francis, who received a total score of 204 points. (Id.) Dixon was tied in second place with Liz Nealin, with each receiving 200 points. (Id. at 5-6.) The SAB recommended Dixon and Nealin as two alternates. (Id.)

The selecting official, Robert Bull, chose to personally interview these remaining three candidates. (Id. at 6.) The interviews were scheduled for thirty minutes each on March 15, 2005, and Bull used a set of seven questions in the interview, developed with the assistance of Captain Jerome Budnick, U.S. Navy, who also sat in on the interviews, but did not ask questions. (Id.) Bull ultimately selected Ron Francis for the position, the candidate recommended by the SAB as the most qualified. (Id. at 6-7.)

That day, March 15, 2005, Dixon met with an EEO counselor and filed an informal complaint, alleging discrimination based on sex, age, and reprisal for protected EEO activities. (Id. at 7.) Dixon asserted that Bull conducted the interviews in a manner not permitted by the local command procedures. (Id.) On April 11, 2005, Dixon was informed he was not selected for the Supervisory Aerospace Engineer position. (Id.) On April 12, 2005, Dixon received a "Notice of Final Interview," which stated the content of his meeting with the EEO counselor regarding the alleged discrimination and his non-selection for promotion to the Supervisory Aerospace Engineer position. (Id.) The Notice informed Dixon that he had the right to file a formal complaint within fifteen days. (Doc. #1 ¶ 29.) Dixon filed a formal complaint of discrimination with the Equal Employment Opportunity Office on April 13, 2005. (Id. ¶ 31.) After the required statutory period, Dixon filed this action.

### III.   ANALYSIS

#### A.   Statute of Limitations

Dixon brought this action under the Age Discrimination in Employment Act, 29 U.S.C. § 621, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e). The administrative regulations governing complaints of age discrimination require that a complainant contact an EEO officer within forty-five days of the alleged discriminatory conduct. 29 C.F.R. § 1614.105. With regards to his non-selection for promotion to Supervisory Aerospace Engineer, Dixon has met this requirement. But Dixon also alleged continuing discrimination for a period of over ten years. Dixon has alleged several instances of non-selection which he asserts was due to age discrimination and retaliation. While all of these alleged incidents fall outside of the forty-five day limitations period, Dixon urges the Court to consider these alleged incidents as part of a continuing violation. While the acts that

fall outside of the limitations period maybe considered if there is a continuing violation, discrete acts are considered separate and the statute of limitations runs from each discrete actions. Cf. Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162 (2007) (holding that where employee alleges a series of EEOC violations, the 180-day statute of limitations runs from each discrete act); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); Shields v. Fort James Corp., 305 F.3d 1280, 1281 (11th Cir. 2002). In Ledbetter, the Supreme Court considered a paycheck an individual discrete act, and therefore not a continuing violation which allowed the tolling of the statute of limitations. Ledbetter, 127 S. Ct. at 2175. Dixon here has alleged several discrete acts in the form of non-selections, and he argues that even if the acts fall outside of the limitations period, each act should be considered for the entire scope of his alleged hostile work environment. But a hostile work environment is typically characterized by a succession of harassing acts, in which "the actionable wrong is the environment, not the individual acts that, taken together, create the environment." Ledbetter, 127 S. Ct. at 2175. A discrete act of discrimination includes such acts as a failure to promote, which Dixon has alleged here. See id.; Shields, 305 F.3d at 1281. Thus, since a failure to promote is a discrete act, and the tolling period must run from each discrete act, the Court can only consider the non-selection for the Supervisory Aerospace Engineer position as the alleged adverse employment action in this case.

  **B.  Count I - Age Discrimination**

Dixon alleges that he was not promoted due to his age. Dixon maintains that Ron Francis, who received the promotion, was nine years younger and was less experienced and qualified. Winter counters that Dixon cannot make out a prima facie case of age discrimination because he cannot show that Francis was substantially younger than himself.

To establish a prima facie case of age discrimination, a plaintiff must prove that (1) he is between forty and seventy years of age, (2) he suffered an adverse employment action, (3) he was replaced by a person outside of the protected age group, and (4) he was qualified for the position in question. Pace v. S. Ry. Sys., 701 F.2d 1383, 1386 (11th Cir. 1983) (applying McDonnell Douglas/Price test to age discrimination cases). The selection of another person within the protected age group does not defeat a claim for discrimination, as long as it can be shown that the hired person is substantially younger than the plaintiff. Id. At 1390. In this case, Dixon was fifty-three years old at the time of the non-selection. Francis was forty-six years old, nine years younger than Dixon. While an age difference of nine years has been recognized as being enough to infer age discrimination, see Healy v. New York Life Ins. Co., 860 F.2d 1209 (3d Cir. 1988), the Eleventh Circuit has recognized that an age difference alone does not establish a prima facie case under McDonnell Douglas. Id. "[I]n no case does [a] court hold that as a matter of law a prima facie case is established if a plaintiff simply shows he is in the protected group, was adversely affected by an employment decision, was qualified and was replaced by one younger than himself." Id. A prima facie case can only be established when there is a basis for inferring that age discrimination was the reason for the employment decision, and the mere fact that the selected person was younger than the plaintiff is not enough, standing alone, to give rise to that inference. Id. Where the selected person is only slightly younger that the plaintiff, there must be substantial evidence of the plaintiff's qualifications "to heft the plaintiff over the line between failure and success in establishing a prima facie case." Id.

In this case, Dixon has asserted that not only are the nine years difference between himself and Francis enough to show that Francis is substantially younger, but Dixon also alleges that Francis

was significantly less qualified.  Dixon supports this assertion by stating that he 'had more years of job related experience, superior educational credentials, and was a Senior Executive management Development Program." (Doc. #21 at 4.)  Dixon's resume states that he was working as a Materials Engineer (GS-13) at the time he applied for the Supervisory Aerospace Engineer position.  (Doc. #19-13 at 2.)  He had worked in this capacity for the previous nine years.  (Id.)  He had twenty-eight years working at NADEP, primarily as a materials engineer and chemist.  (Id.)  Dixon holds an undergraduate degree in Chemistry, a Master's degree in Materials Engineering, and a juris doctor. (Id. at 8.)

Francis has an undergraduate degree in Aerospace Engineering, and was pursuing his Master's degree in Aerospace Engineering at the time he applied for the position. (Doc. #19-12 at 4.)  Francis has been employed by the Navy since 1985, working mainly as an Aerospace Engineer . (Id. at 2-3.)  For the eight years prior to his application for the position, Francis served as a Supervisory Aerospace Engineer (GS-14) at the Naval Air Systems Command, Jacksonville. (Id. at 2.)  The SAB concluded that Francis was the most qualified candidate for the position of Supervisory Aerospace Engineer.  Bull, the selecting official, found that Francis "displayed a better knowledge of the technical aspects of the job and . . . a commanding understanding of the national initiatives within the Air Vehicle arena," whereas Dixon "did not show as strong a background or experience in Air Vehicle" and he "did not present a discussion of the initiatives as well as" either Francis or Nealin.  (Doc. #19-11 ¶ 31-33.)  The Court's examination of each candidate's qualification does not reveal that this determination was in error.  While Francis may be younger that Dixon, the evidence does not show that Francis was so less qualified than Dixon as to justify an inference of age discrimination as the reason Francis was selected for the position of Supervisory

Aerospace Engineer, a position Francis was currently holding at the time he applied for the promotion. Therefore, the Court finds that Dixon has failed to establish a prima facie case for age discrimination, and summary judgment is proper.

### C. Count II - Retaliation

Dixon alleges in Count II that he was not selected for the Supervisory Aerospace Engineer position in retaliation for his prior EEO complaints. To establish a prima facie case of retaliation, a plaintiff must show that 1) he engaged in a protected activity, 2) he suffered an adverse employment action, and 3) that the adverse action was causally related to the protected activity. Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999). Dixon's prior EEO complaints are certainly a protected activity, and the denial of a promotion is an adverse employment action. Therefore, the only question is whether his prior EEO complaints are causally related to the non-selection for the Supervisory Aerospace Engineer position.

"To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." Gupta v. Fla. Bd. of Regents, 221 F.3d 517, 590 (11th Cir. 2000). Winter argues that Dixon cannot show that the members of the SAB were aware of his prior protected activity. According to the EEO Declarations, four out of the five members of the SAB stated they were unaware of Dixon's prior EEO complaints. (Doc. #19 at 17.) Only one member, Bradley L. Hallock, was aware Dixon had filed an EEO complaint. (Doc. #19-6 at 3.) Approximately a year before the SAB convened for the Supervisory Aerospace Engineer position, Hallock received a phone call regarding an EEO complaint filed by Dixon; Hallock was asked to provide testimony for Dixon's complaint. (Id.) Bull, the selecting official, was the only other individual who was aware

of Dixon's prior protected activity. (Doc. #19 at 17-18.) Bull eventually selected Francis for the position based on the SAB's recommendation and the second interview which confirmed Francis was the best qualified for the position. (Doc. #19-11 ¶ 30-31.) Therefore, Winter argues that there is no casual connection between Hallock's and Bull's awareness of Dixon's prior protected activity and Dixon's non-selection for the position.

The Court agrees that there is not a causal connection between Hallock's and Bull's knowledge of Dixon's prior complaints and the selection of Francis for the Supervisory Aerospace Engineer position. Hallock was one of five members of the SAB, and the time between his knowledge of Dixon's protected activity and the adverse employment action was approximately a year. Temporal proximity, as used to establish causation, must be very close. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). Periods as short as three to four months have been held to be insufficient to create causation. Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004) (finding three month period did not create link between protected activity and alleged retaliation); Wascura v. City of S. Miami, 257 F.3d 1238, 1248 (11th Cir. 2001) (holding three and one-half months not enough to show causation). And mere awareness alone does not give rise to the inference of causal connection. Therefore, the Court finds that Dixon has failed to establish a prima facie case for retaliation, and summary judgment should be granted.

### D.     Count III - Gender Discrimination

Dixon alleges in Count III that he was not selected for the promotion because of his gender. Winter contends that Dixon has not identified any position for which Dixon was eligible and a woman was selected instead. In fact, the candidate chosen for the position instead of Dixon was a man. Dixon failed to respond to this assertion in his Response, apparently waiving this claim. Even

so, there is no issue of fact as to whether Dixon was discriminated against because of his gender, and summary judgment is proper on Count III.

### E. Count IV - Hostile Work Environment

Dixon has claimed that he suffered a hostile work environment due to discrimination against him based on his sex and prior protected activities. To this end, Dixon has alleged several non-selections for promotions as evidence of this discrimination. As stated previously, a failure to promote is a discrete act. Shields, 305 F.3d at 1281. A claim of a hostile work environment differs from discrete acts in that it consists of repeated conduct that may not be actionable on its own. Morgan, 536 U.S. at 115. "A hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Id. at 117. It consists of the totality of the circumstances and harassing conduct, "whether it is physically threatening or humiliating, or a mere offensive utterance." Id. at 116. This is conduct that is so pervasive that it alters the terms of the employment. Id.

Dixon has not alleged this type of harassing environment. He has alleged several discrete adverse employment actions. The Court does not find these non-selections for promotions collectively constitute one unlawful employment practice. They are discrete acts, each independently actionable. Furthermore, the Court has already determined that Dixon did not suffer any discrimination due to his sex or his prior protected activities. Thus, Dixon has failed to establish a prima facie case for a hostile work environment, and summary judgment is due.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant's' Motion for Summary Judgment (Doc. #19) is hereby **GRANTED**. The Clerk of the Court shall enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 10th day of August, 2007.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel of Record
Pro Se Parties